# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:17-cr-00044 |
| ) | |
| PATRICK DANE FALTE, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' objections to aggravating role enhancements applied in the Defendants' Presentence Reports. The Government objects to the enhancements applied to Defendants Faulkner, Leslie, and Budesek for Count 1. (See Doc. Nos. 167, 169, 171.) Falte objects to the enhancement applied to him for Counts 4 through 9. (See Doc. No. 160.) For the following reasons, the Government's objections are sustained and Falte's objection is overruled.

I.  Background and Enhancements Applied by Probation in the Defendants' Presentence Reports

Defendants Falte, Faulkner, Leslie, and Budesek pled guilty to Count One, which charges that, between July 16, 2015, and October 2, 2016, they knowingly engaged in a child exploitation enterprise, in violation of 18 U.S.C. § 2252A(g). Falte also pled Guilty to Counts 4, 5, and 6, advertising child pornography, in violation of 18 U.S.C. § 2251(d)(1)(A) and (d)(2)(B), and Counts 7, 8, and 9, distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2). The offense conduct in the case centers around the Giftbox Exchange, a website that operated as a "hidden service" on the Tor anonymity network, which is designed specifically to facilitate anonymous

1

communication over the Internet. The Giftbox Exchange was dedicated to the advertisement and distribution of child pornography and served as a forum for networking by individuals, including Defendants, interested in the sexual exploitation of children.

The U.S. Probation Department calculated Defendants' offense level in their Presentence Reports. Under U.S.S.G. § 3B1.1(a), Probation assessed Falte a 4-level adjustment on Count 1 because he was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Specifically, Probation found that the instant offense involved "a sophisticated child pornography scheme" over which Falte "had ultimate decision-making authority," including "develop[ing] and implement[ing] the website and set[ting] up the rules for membership in the website," and "review[ing] and approv[ing] posts containing child pornography." Falte Presentence Report ("PSR") at ¶ 54. Further, Probation found that Falte "maintained a public key cryptography system to verify the identity of Giftbox Exchange members and paid for the computer server hosting Giftbox Exchange using bitcoin, a type of encrypted digital currency. Id. He also controlled the private key access. Id. Probation assessed Falte a 4-level upward adjustment on Counts 4, 5, 6, 7, 8, and 9 on the same "organizer or leader" basis under U.S.S.G. § 3B1.1(a). Specifically, Probation found that Falte oversaw other Defendants and members of Giftbox Exchange when he:

> advertised and distributed child pornography to induce website visitors to become members and post additional child pornography. He distributed child pornography from this site by creating content for [Giftbox Exchange], advertising for [Giftbox Exchange], and reviewing and approving posts containing child pornography by users who sought membership to [Giftbox Exchange]. Once a user was a member, the defendant continued to review and approve posts containing child pornography by the members and members who sought to become VIP members.

2

Falte PSR at ¶ 65.

Probation assessed Faulkner a 3-level upward adjustment, under U.S.S.G. § 3B1.1(b) because he was "a manager or supervisor of a criminal activity that involved five or more participants or was otherwise extensive." Specifically, Probation concluded that Faulkner was "an administrator of [Giftbox Exchange]" and, in that role, (1) "reviewed and approved posts containing child pornography"; (2) with Defendant Falte maintained a public and private key cryptography system to verify the identity of Giftbox Exchange members; and (3) maintained backup databases that would allow Faulkner to restore Giftbox Exchange if it went down. Faulkner PSR at ¶ 42.

Probation did not assign any aggravating role enhancement to Leslie or Budesek.

II.     Legal Standards

The Sentencing Guidelines provides that, "[b]ased on the defendant's role in the offense," the Court may increase a defendant's offense level as follows:

> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
>
> (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
>
> (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

U.S.S.G. § 3B1.1. The Sixth Circuit has explained:

> In distinguishing a leadership and organizational role from one of mere management or supervision . . . the court should consider the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the

3

> claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.

App. Note 4; see also United States v. Wright, 747 F.3d 399, 412 (6th Cir. 2014) (endorsing use of these factors and explaining that more than one person may qualify as a leader or organizer and a defendant does not need to have been the sole leader to qualify for the leader/organizer enhancement).

"[T]he determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of U.S.S.G. § 1B1.3 (Relevant Conduct), . . . and not solely on the basis of the elements and acts cited in the count of conviction." Intro. Commentary to § 3B1.1. "Relevant conduct" is defined as: (1) acts or omissions committed by the defendant "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility" for the conviction offense, U.S.S.G. § 1B1.3(a)(1)(A), *or*, for those offenses that require grouping of multiple counts pursuant to § 3D1.2(d), (2) "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction."[1] U.S.S.G. § 1B1.3(a)(2); see also U.S. v. Weiner, 518 F. App'x 358, 363 (6th Cir. 2018) (explaining same).

The Government bears the burden of proving that an aggravated role enhancement applies by a preponderance of the evidence. Wright, 747 F.3d at 412 (citing United States v. Vendeberg,

---

[1] U.S.S.G. § 1B1.3(a)(1)(B) concerns the manner in which the Court may consider the acts and omissions "of others" in a jointly undertaken criminal activity as relevant conduct. The Government has *not* argued that this section is applicable here and it is not discussed further.

4

201 F.3d 805, 811 (6th Cir. 2000)). Relevant conduct, too, need be found only by a preponderance of the evidence. United States v. Corrado, 227 F.3d 528, 542 (6th Cir. 2000); United States v. Penaloza, 648 F. App'x 508, 521 (6th Cir. 2016). While courts do not have "a blank check to accept whatever they hear at sentencing," United States v. Santana, 723 F. App'x 331, 341 (6th Cir. 2018), "[w]hen a defendant fails to produce any evidence to contradict the facts set forth in the [Presentence Report], a district court is entitled to rely on those facts when sentencing the defendant." United States v. Geerken, 506 F.3d 461, 467 (6th Cir. 2007).

III. Objections and Analysis

    A. Government's Objections to Aggravating Role Enhancements for Faulkner, Leslie, and Budesek

First, the Government objects that Leslie and Budesek have not been given any aggravating role enhancements. (Doc. Nos. 169, 171.) It contends that they should receive this enhancement based upon relevant conduct on other websites during the same time period as this offense. Second, the Government objects that Faulkner has been given a 3-level increase for role as manager/organizer instead of a 4-level increase for role as leader/organizer. (Doc. No. 167.) It argues that Faulkner should receive the 4-level enhancement based on his role in the Giftbox Exchange as well as relevant conduct on another website during the same time period as this offense.

The Government argues that, because Count 1 is a Count that groups under U.S.S.G. § 3D1.2(d), the Court should apply the broader definition of relevant conduct in *U.S.S.G. § 1B1.3(a)(2)*, "which includes all acts and omissions . . . that were part of the same course of

5

conduct or common scheme or plan as the offense of conviction."[2] (Doc. No. 167 at 2.) Under that standard, the Government argues that the Court should consider as relevant conduct (1) Leslie's creation and administration of another Tor child pornography website, Cache of Cheese Pizza ("CCP") during the same time period that he was an administrator on the Giftbox Exchange; (2) Bedusek's service as a moderator on Child's Play, another Tor child pornography website that operated during the same period as the Giftbox Exchange; and (3) Faulkner's creation and administration of another Tor child pornography website called Private Pedo Club ("PPC") during the same time period that he was an administrator on the Giftbox Exchange. (Doc. Nos. 167, 169, 171.)

The definition of relevant conduct under Section 1B1.3(a)(2) applies to only those "offenses of a character for which § 3D1.2(d) *would require* grouping of multiple counts." U.S.S.G. § 1B1.3(a)(2) (emphasis supplied); United States v. Gill, 348 F.3d 147, 152 (6th Cir. 2003) (same); see also, e.g., United States v. Bowling, Crim. No. 6:09-16-S-DCR, 2011 WL 839558, at *3 (E.D. Ky. Mar. 7, 2011) (explaining that subsection (a)(2) applies to "groupable offenses"). As the Court of Appeals has explained:

> [T]he guideline is not concerned with whether the *relevant conduct* would be grouped with the *offense conduct*. Section 1B1.3(a)(2) simply says its provisions apply to groupable "offenses," and then authorizes courts to consider other acts that "were part of the same course of conduct or common scheme or plan as the offense of conviction." For example, application note 3 to § 1B1.3 authorizes courts in drug distribution cases to consider unindicted sales as relevant conduct. In the same way, an unindicted child exploitation offense (like Hodge's voyeur videos) may be relevant to a groupable child exploitation "offense of conviction," provided that the

---

[2] The Probation Department's responses do not address this contention. Probation responds based upon application of U.S.S.G. §§ 1B1.3(a)(1), but *not* § (a)(2). See Leslie PSR Addendum; Budesek PSR Addendum; Faulkner PSR Addendum.

6

>     unindicted acts were part of the same "course of conduct" or
>     "common scheme" as the offense.

United States v. Hodge, 805 F.3d 675, 682 (6th Cir. 2015). Thus, the determination of whether Count 1 is a "groupable" Count does not turn on whether Faulkner, Leslie, or Budesek were charged with or pled guilty to other crimes.

Count 1 child exploitation enterprise offense qualifies as one for which § 3D1.2(d) would require grouping of multiple counts. Offenses characterized by the grouping rule contained in Section 3D1.2 include those that are determined largely on the basis of the total harm or loss. U.S.S.G. § 3D1.2(d). Here, probation has determined that Count 1 is an offense that requires grouping pursuant to U.S.S.G. § 3D1.2(d), because the harm associated with the offense is "largely determined on the basis of total amount of harm or loss, or some other measure of aggregate harm." Falte PSR at ¶ 49. This Court agrees. Hodge, 805 F.3d at 682 (reaching same conclusion regarding similar child pornography offenses). Further, in addition to being commonly measured in terms of aggregate harm, child pornography offenses are clearly of the same "general type." United States v. Weiner, 518 F. App'x 358, 364-65 (6th Cir. 2013) (citing U.S.S.G. § 3D1.2 App. Note 6).

The Court must therefore apply the broader standard for relevant conduct under U.S.S.G. § 1B1.3(a)(2), and consider any acts or omissions of Faulkner, Leslie, or Budesek that were part of (1) the same course of conduct, (2) common scheme, or (3) plan of the offense involving the Giftbox exchange. Under application note 9(A) to § 1B1.3(a)(2), a "common scheme or plan" requires that the acts "be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." See Hodge, 805 F.3d at 683 (citing Hill, 79 F.3d at 1481). In Hodge, the Sixth Circuit held that the "common purpose" of "fulfillment of [ ] sexual interest in minors" stretched across the separate

7

acts of receipt of child pornography and production of voyeur videos. Id. The Court of Appeals thus found that production of the voyeur videos was part of a "common scheme" with the defendant's offense of conviction. Id. The Court considers whether the acts of Defendants cited by the Government arises from a "common purpose" and are part of a "common scheme," such that it they are relevant conduct to be considered in the aggravating role enhancement analysis.

1. Leslie

Leslie's role in the CCP website is relevant conduct because it was both part of a "common scheme or plan" with his offense of conviction and part of the same "course of conduct." According to the PSR, Leslie *created and administered* CCP, another site that facilitated the sharing of graphic sexual images and videos of children, during the same time period as he was a member of the Giftbox Exchange. Leslie PSR at ¶ 44. Although Leslie expressed the view at his plea hearing that CCP "did not pertain to this case," (Doc. No. 125 at 10), that is not outcome determinative on the relevant conduct inquiry. Critically, Leslie admitted the "[he] did have another website." Id. CCP and the Giftbox Exchange sites obviously shared the common purpose of the trading of child pornography and they utilized a similar modus operandi of operating under the anonymity offered by Tor. As just one example of this shared modus operandi and common purpose, Leslie used the Giftbox Exchange to communicate with CCP members regarding his need to temporarily shut down CCP. (Doc. No. 169 at 2-3.)

Thus, the Court must consider Leslie's relevant conduct on CCP for the purpose of his aggravating role enhancement. Leslie is ineligible for a 4-level leader/organizer enhancement because there is no claim that, as required, he led, supervised, or exerted control over at least one other individual within CCP. United States v. Washington, 715 F.3d 975, 983 (6th Cir. 2013);

8

United States v. Meriweather, 728 F. App'x 498, 522 (6th Cir. 2018) (citing United States v. Gort-Didonato, 109 F.3d 318, 321 (6th Cir. 1997)); Leslie PSR at ¶ 44. Under the guiding factors discussed earlier, Leslie's creation and administration of CCP does, however qualify for the 3-level manager/supervisor enhancement. Leslie (1) exercised decision making authority over CCP, (2) participated intimately in CCP's operation; (3) in doing so managed CCP's operations; and (4) exercised control and authority over CCP. U.S.S.G. § 3B1.1, App. Note 4; Wright, 747 F.3d at 412; Leslie PSR at ¶ 44; (Doc. No. 169 at 2-3).

The Government's objection is sustained and a 3-level manager/supervisor role enhancement is added to Leslie's offense level calculation.

        2.      Bedusek

Bedusek's role in the Child's Play website is also relevant conduct because it was both part of a "common scheme or plan" with his offense of conviction and part of the same "course of conduct." According to the PSR, Bedusek was a *moderator* on Child's Play, another Tor website that was "dedicated to the advertisement, distribution, and receipt of child pornography." Budesek PSR at ¶ 45. This information was included in the Government's recitation of facts at the plea colloquy and Budesek stated that it was true and accurate. Id. at ¶ 45 n.5. As with the CCP site, the Child's Play site and the Giftbox Exchange obviously shared the common purpose of the trading of child pornography and they utilized a similar modus operandi of operating under the anonymity offered by Tor.

Thus, the Court must consider Bedusek's relevant conduct on Child's Play for the purpose of his aggravating role enhancement. Bedusek is also ineligible for a 4-level leader/organizer enhancement because there is no claim that, as required, he led, supervised, or exerted control over

9

at least one other individual within Child's Play. <u>Washington</u>, 715 F.3d at 983; <u>Meriweather</u>, 728 F. App'x at 522; Budesek PSR at ¶ 45. Under the guiding factors, Bedusek's concession that he was a "moderator" of Child's Play is sufficient to qualify him for a manager/supervisor enhancement. Moderators are charged with the day-to day operations of a website. <u>Compare with</u> Falte PSR at ¶¶ 16-17 (explaining duties of child pornography website moderators). Accordingly, the Court may conclude that, as a moderator, Budesek, at the least, (1) managed and participated intimately in Child's Play's operations, and, to some assigned degree, (2) exercised control and authority over Child's Play. U.S.S.G. § 3B1.1, App. Note 4; <u>Wright</u>, 747 F.3d at 412; Budesek PSR at ¶ 45; (Doc. No. 171 at 1).

The Government's objection is sustained and a 3-level manager/supervisor role enhancement is added to Leslie's offense level calculation.

### 3. <u>Faulkner</u>

As an initial matter, the Government's preliminary argument that Faulkner should be given a 4-level leader/organizer enhancement instead of a 3-level manager/supervisor enhancement based upon his role as co-administrator role for the Giftbox Exchange in this case fails because there is no claim that, as required, he led, supervised, or exerted control over at least one other individual within the Giftbox Exchange. <u>See</u> Faulkner PSR at ¶¶ 11-18; <u>Washington</u>, 715 F.3d at 983 (6th Cir. 2013); <u>Meriweather</u>, 728 F. App'x at 522. Indeed, according to the PSR, Faulkner has only admitted that "he and Falte ran [Giftbox Exchange]." Faulkner PSR at ¶ 18.

However, Faulkner's role in Child's Play is also relevant conduct because it was both part of a "common scheme or plan" with his offense of conviction and part of the same "course of conduct." According to the PSR, Faulkner was the *creator and administrator* of Child's Play,

10

another Tor website that was "dedicated to the advertisement, distribution, and receipt of child pornography," during the same time period he was an administrator on Giftbox. Id. at ¶ 18. Indeed, Faulkner confessed that his "workload [managing the two websites] was intense." Id. According to the Government, Child's Play eventually grew larger than the Giftbox Exchange and the members of the two sites communicated about their criminal aims. (Doc. No. 168.) As discussed above, the CCP site, the Child's Play site and the Giftbox Exchange obviously shared the common purpose of the trading of child pornography and they utilized a similar modus operandi of operating under the anonymity offered by Tor.

Thus, the Court must consider Faulkner's relevant conduct on Child's Play for the purpose of his aggravating role enhancement. Faulkner *is* eligible for the 4-level leader/organizer enhancement based on his leadership of the Child's Play website because, as the creator and administrator of Child's Play, he organized the extensive site and led, supervised, or exerted control over at five or more individuals, including Budesek, one of its moderators.

B.    Falte's Objection to Aggravating Role Enhancement

Falte argues that his PSR improperly applies a 4-level leader/organizer enhancement to Counts 4, 5, 6, 7, 8, and 9, by "bootstrapping activity related to Count 1, which concerns a child exploitation enterprise, asserting that after individuals became members of Website A, Falte "oversaw the activities of other members of Website A, to include codefendants." (Doc. No. 160 at 3.) Falte relies on the propositions that, under U.S.S.G. § 3B.1.1, (1) only defendants who are organizers, leaders, supervisors, or managers over a "participant" are eligible for a leadership enhancement, and (2) a "participant" is defined as "a person who is criminally responsible for the commission of the offense." Id. But, only Falte has pled guilty to Counts 4 through 9, so only he

11

is criminally responsible for those offenses. None of his co-defendants were charged in Counts 4 through 9. Id. (citing Falte PSR at ¶ 20.) Because there are no other "participants" in Counts 4 through 9, Falte argues, the leadership enhancement cannot apply to the offense calculation of those Counts.

The Government responds that Falte's advertisement and distribution of child pornography (Counts 4 through 9) were part of, and integral to, his participation in the criminal enterprise. (Doc. No. 165 at 5.) In short, the Government maintains that "of course" distributing and advertising child pornography on Website A involved other "participants" – the thousands of Website A members who viewed those images. Id.

The burden of proof and persuasion is on the Government to establish by a preponderance of the evidence that the role enhancement applies. Under § 3B1.1(a), a 4-level aggravating role leader/organizer enhancement is appropriate if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S. G. § 3B1.1. Application Note 1 to Section 3B1.1 defines "participant" as "a person who is criminally responsible for the commission of the offense, *but need not have been convicted*." There is no direct evidence of the specific "five or more" participants who were involved with Falte. There is circumstantial evidence that the Giftbox Exchange "had over 1,500 members, many of whom actively posted new content and who engaged in online discussions involving the sexual abuse and exploitation of minors. During the operation of the Giftbox Exchange, over 15,000 images and 150 videos of child pornography were traded, [ ] includ[ing] the images and videos posted by [Falte]." Falte PSR at ¶ 21. There is no question that Falte had the central role in leading the Giftbox Exchange and ultimate decision-making authority over all key aspects of it. See id. at ¶¶

12

15-19. But that circumstantial evidence is too broad for the Court to conclude that there were specific participants who "could *potentially* be incarcerated." United States v. Maken, 510 F.3d 654, 659 (6th Cir. 2007); see also Hodge, 805 F.3d at 679 (same). To reach the conclusion advanced by the Government would require this Court to assume that among the 1,500 Giftbox members at least five members distributed and advertised the images in Counts 4 through 9. While this may be the case, it can also not be true. The Government has not met its burden of proof or persuasion by a preponderance of the evidence.

However, the Court does conclude that the Government satisfies the alternative condition in Application Note 1 that the criminal activity was "otherwise extensive." § 3B1.1(a) Application Note 3 defines "otherwise extensive" by consideration of "all persons involved during the course of the entire offense." App. Note 3. Counts 4 through 9 involved advertising and distributing child pornography through the Giftbox Exchange to the over 1,500 members of the Giftbox Exchange whom Falte recruited, approved, and managed. These members joined to gain access to child pornography through the Giftbox Exchange for over 15 months. It is easy for this Court to find that Falte was involved as an organizer or leader of a criminal activity that was "otherwise extensive."

The PSR properly applies the 4-level leader/organizer aggravating role enhancement to Counts 4 through 9 under U.S.S.G. § 3B1.1(a). Falte's objection will be overruled.

IV. Conclusion

For the foregoing reasons, the Court **SUSTAINS** the Government's aggravating role enhancement objections. A 3-level manager/supervisor role enhancement is added to the offense level calculation of Leslie and Budesek, and Faulkner's role enhancement is increased from a 3-

13

level manager/supervisor enhancement to a 4-level leader/organizer enhancement. Falte's objection to the 4-level leader/organizer enhancement on Counts 4 through 9 is **OVERRULED**.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE